# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCES ANTICO, *Executrix of the Estate of June Germinario*,<br><br>Plaintiff,<br><br>v.<br><br>RAM PAYMENT, L.L.C. *et al.*,<br><br>Defendants. | Civil Action<br>No. 20-12130 (CPO)<br><br>**OPINION** |

**Appearances:**

Joseph Michael Pinto
POLINO AND PINTO, P.C.
720 East Main Street, Suite 1C
Moorestown, NJ 08057

Carl D. Poplar
POLINO AND PINTO, P.C.
1010 Kings Highway South, Building Two
Cherry Hill, NJ 08034

    *On behalf of Plaintiff June Germinario.*

Shaji M. Eapen
METHFESSEL & WERBEL, ESQS.
2025 Lincoln Highway, Suite 200
Po Box 3012
Edison, NJ 08818

    *On behalf of Defendants Reliant Account Management, L.L.C. (California), RAM Payment, L.L.C., Reliant Account Management, L.L.C. (Tennessee), Account Management Systems, L.L.C., Reliant Account Management Systems, L.L.C., Gs Associated Holdings, L.L.C. (California), GS Associated Holdings, L.L.C. (Arizona), WST Management, L.L.C., Austin Co. L.L.C., Reliant Management Services, L.L.C. Stephen Chaya, Gregory Winters, Scott Austin, Stephen Chaya Trust Agreement.*

**O'HEARN, District Judge.**

## INTRODUCTION

This case comes before the Court on Plaintiff Frances Antico's Motion to Certify Class (ECF No. 19). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons discussed below, the Court will **DENY** Plaintiff's Motion without prejudice.

### I.   PROCEDURAL HISTORY

Plaintiff filed her initial Complaint in the Superior Court of New Jersey, Law Division, Burlington County on March 22, 2019. (ECF No. 68 exh. A). Defendants removed the case to this Court on July 11, 2019, (ECF No. 68 exh. B), but this Court granted Plaintiff's Motion for Remand to the Superior Court on April 20, 2020, (ECF No. 68 exh. C).

Plaintiff subsequently served Defendants Reliant Account Management, L.L.C., Reliant Account Management Systems, L.L.C., and Account Management Systems, L.L.C. between August 3, 2020, and August 4, 2020. (ECF No. 68 at 4). Defendants then removed the case to this Court for the second time on September 1, 2020. (ECF No. 68 exh. E).

On September 9, 2020, Plaintiff filed an Amended Complaint, (ECF No. 4), and filed the Motion to Certify Class presently before the Court on October 23, 2020, (ECF No. 19). On August 19, 2019, Plaintiff moved to Substitute a Party following the death of June Germinario. (ECF No. 56). The Executrix of June Germinario's Estate, Francis Antico, was substituted as the plaintiff on March 16, 2022. (ECF No. 83).

The parties proceeded with discovery, during which time they notified the Court that they had new information that may impact the Motion and requested to file supplementary briefing. (ECF No. 64). The Court granted the request and each party filed a supplemental brief. (ECF Nos. 64, 66, 74).

## II.   FACTUAL BACKGROUND[1]

### A. Parties

There are a significant number of Defendants in this case and the Court will adopt Plaintiff's method of grouping and designating Defendants based on their participation in the alleged conduct.

The first group of companies, electronic payment processing companies and money transmitters, are designated the "Principal Defendants." The group includes Defendants, Reliant Account Management L.L.C. (California) ("RAM CA"); Reliant Account Management, L.L.C. (Tennessee) ("RAM TN"), now known as Account Management Systems, L.L.C. ("AMS"); Reliant Account Management Systems ("RAMS"); and RAM Payment, L.L.C. ("RAMP").

The second group of companies directed the actions of the Principal Defendants and are designated as "Participating Defendants." The group includes Defendants, RAMP,[2] GS Holdings L.L.C. (California) ("GSCA"); GS Holdings L.L.C. (Arizona) ("GSAZ".); WST Management, L.L.C. ("WST"); Austin Co. L.L.C. ("AC"); Reliant Management Services, L.L.C. ("RMS"), Stephen Chaya; Gregory Winters, Scott Austin, and Stephen Chaya Trust Agreement (SCTA).

The final group of companies, Florida debt settlement companies now out of business, are designated the "Bankrupt Defendants." The group includes Active Debt Solutions, L.L.C. f/k/a

---

[1] Since the Court must make factual determinations to support Rule 23 findings by a preponderance of the evidence standard, *Reyes v. NetDeposit L.L.C.*, 802 F.3d 469,484 (3rd Cir. 2015), the Court does not accept the factual allegations of the Amended Complaint as true for the purpose of this Motion and will make all necessary factual determinations, *see also Marcus v. BMW of N. Am., L.L.C.*, 687 F.3d 583, 591 (3d Cir. 2012) ("Rule 23 gives no license to shy away from making factual findings that are necessary to determine whether the Rule's requirements have been met.").

[2] Plaintiff places RAMP in both the Principal and Participating Defendants groups. The Court assumes they do so because RAMP played a duel role in the transactions and considers them in both groups as well.

Active Debt Solutions, Inc. d/b/a Guardian Legal Center ("Guardian") and Paralegal Support Group f/k/a Paralegal Support Staff ("Paralegal").[3]

### B. Facts

Plaintiff, a New Jersey citizen, entered into a debt settlement agreement with Legal Helpers Debt Resolution, L.L.C. ("Legal Helpers") on August 16, 2010. (Am. Compl., ECF No. 4 ¶¶ 4,7). The agreement authorized Legal Helpers to negotiate the reduction of Plaintiff's debt to creditors Capital One, to whom Plaintiff owed $4,910, and Sears, to whom Plaintiff owed $17,634. (Am. Compl., ECF No. 4 ¶ 4). Plaintiff also executed a second document entitled Special Purpose Account Application which authorized Global Client Solutions, L.L.C. ("Global") to electronically withdraw money from Plaintiff's bank account each month and deposit it into an escrow account. (Am. Compl., ECF No. 4 ¶ 5). The purpose of the escrow account was to both pay the costs and fees of Legal Helpers and Global's services and pay any creditors who agreed to a settlement. (Am. Compl., ECF No. 4 ¶ 6). Legal Helpers filed for Chapter 7 Bankruptcy and notified Plaintiff that it was terminating her relationship with Legal Helpers and Global. (Am. Compl., ECF No. 4 ¶ 10). At Plaintiff's request, Global issued her a check in the amount of $8,517.09. (Am. Compl., ECF No. 4 ¶ 11).

On May 22, 2014, Guardian contacted Plaintiff to advise her that they were taking over her debt settlement program. (Am. Compl., ECF No. 4 ¶ 14). The following month, at Guardian's instruction, Plaintiff sent a check for $8,127.28 to Paralegal. Guardian used the Principal Defendants to withdraw money from Plaintiff's bank account each month and deposit it into an

---

[3] It does not appear from the docket that Defendants Guardian or Paralegal have been served.

escrow account, the purpose of which was to pay the costs and fees of Guardian and the Principal Defendants and pay any creditors who agreed to a settlement. (Am. Compl., ECF No. 4 ¶ 14).

Throughout the course of these transactions, Plaintiff alleges that one of the Principal Defendants paid itself illegal transaction charges amounting to $298.50 over the course of thirty months, and paid additional illegal fees to Guardian, all while paying nothing to creditors. (Am. Compl., ECF No. 4 ¶ 20).

**C.  Contracts and Discovery**

The three main documents before the Court are:

(1)  samples of RAM template contracts with arbitration agreements ("RAM template contracts") used between 2013–2021 that may have been signed by members of the proposed class, (Def. Br. in Opp., ECF No. 26, exh. B) (Pla. Supp. Br., ECF No. 66, exh. H–Q);

(2) an Electronic Funding Authorization & Service Agreement ("Funding Authorization") executed by Plaintiff, permitting Defendant RAM to process the costs and fees associated with Plaintiff's contract with Active Debt Solutions, (Pla. Supp. Br., ECF No. 66, exh. B, Bates No. 414); and

(3) a Settlement Agreement and General Release from the matter of *Federal Trade Commission and State of Florida v. Jeremy Lee Marcus, et al.*, No. 17-60907 (S.D. Fl) ("Florida Settlement Agreement") that Defendants allege may be binding on some members of the proposed class, (Def. Br. in Opp., ECF No. 26, exh. A).

According to the supplemental briefing, Plaintiff learned after initial discovery, that "Plaintiff execute[d] a contract with the RAM defendants," but the parties have been unable to produce the actual executed contract at this point in discovery. (Pla. Supp. Br., ECF No. 66 at 2). Neither party has a copy of the contract as it appears that Paralegal sent RAM's contract to

Plaintiff, never provided a copy to RAM, and has been unable to furnish it thus far in discovery. (Pla. Supp. Br., ECF No. 66 at 3, 5). Therefore, "it cannot be determined with 100% certainty" whether or not Plaintiff's contract includes an arbitration agreement. (Pla. Supp. Br., ECF No. 66 at 2).

As for the contracts of the proposed class members, Defendants have "issued a subpoena to the Receiver for the Marcus Entities, in an attempt to determine the exact number of individuals whose agreements contain language mandating arbitration and waiver of participation in a class action lawsuit," (Def. Supp. Br., ECF No. 74 at 10 n.2), but they have not yet provided that information. Plaintiff alleges that confidential discovery has disclosed close to a 6,000-person class but that Defendants have only produced some of the single signature pages so far. (Pla. Supp. Br., ECF No. 66 at 6).

### III. LEGAL STANDARD

The requirements for class certification are set forth in Federal Rule of Civil Procedure 23. Under Rule 23, the moving party bears the burden of showing that the proposed class satisfies the four prerequisites of Rule 23(a), and that the action can be maintained under at least one subsection of Rule 23(b). *See Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184–84 (3d Cir. 2001); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997).

The four prerequisites of Rule 23(a) are satisfied when:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

F.R.C.P. 23(a). "Commonly referred to as numerosity, commonality, typicality, and adequacy of representation, these four requirements are 'meant to assure both that the class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances.'"

6

*Banda v. Corzine*, 2007 WL 3243917, at *15 (D.N.J. Nov.1, 2007) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)).

Upon satisfying Rule 23(a), the moving party must then show that the putative class falls under at least one of the subsections of Rule 23(b). *Id.* at *18. In the present case. Plaintiffs bring their claims under Rule 23(b)(3), which requires that "[(i)] questions of law or fact common to class members predominate over any questions affecting only individual members, and [(ii)] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Considerations in a Rule 23(b)(3) determination include

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Courts deciding whether to certify a class under Rule 23 must undertake a "rigorous analysis" and consider all relevant evidence and arguments presented by the parties. *See In re Hydrogen Peroxide Antitrust Lit.*, 552 F.3d 305, 309–10 (3d Cir. 2008). Decisions to certify a class require "findings by the court, not merely a threshold showing" by the moving party, that the requirements of Rule 23 are met. *Id.* at 307. The Court "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits," *id.*, and those factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence, *Reyes v. NetDeposit L.L.C.*, 802 F.3d 469,484 (3rd Cir. 2015); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012) ("Rule 23 gives no license to shy away from making factual findings that are necessary to determine whether the Rule's requirements have been met."); *In re Ford Motor Co. Ignition Switch*, 174 F.R.D. 332, 339 (D.N.J. 1997) (finding that it may be necessary for the court "to analyze the elements of the parties' substantive claims and review facts

7

revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied.").

## IV. DISCUSSION

After a review of the parties' briefs and the discovery presented so far, the Court believes that further discovery is required for the Court to engage in a rigorous analysis of the Motion. The Court will therefore **DENY** Defendant's Motion to Certify Class (ECF No. 19) and grant Plaintiff leave to renew her motion at the close of discovery.

Since there does not appear to be a challenge to the ascertainability, numerosity, superiority, or adequacy of representation, the Court will review these only briefly. The Court's main concern is that it is unable to conduct a rigorous review of the commonality, typicality, and predominance requirements given the potential disruptive impact of arbitration agreements which are not before the Court and about which there is inadequate information at the present time.

### A. Ascertainability

A class is ascertainable if it is (1) "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). Further, "a plaintiff [need not] be able to identify all class members at class certification—instead, a plaintiff need only show that class members can be identified." *Id.* (internal quotation omitted).

Plaintiff presents the class as

> a definite number of N.J. residents, all of whom had escrow subaccounts administered by defendants in connection with debt reduction programs and defendants have a reliable computerized record of all of the names, addresses and account numbers of all of the account holders, which includes the amount deposited into and disbursed from each account, the person or entity receiving and the amount of each disbursement and how each disbursement was classified.

(Motion to Cert. Class, ECF No. 19 at 11). The parties appear to agree that given the contracts, account statements, and financial records involved in these transactions, such a class should be easily ascertainable. Defendants do not appear to challenge this requirement. The Court finds that Plaintiff has satisfied the ascertainability requirement of Rule 23(a).

### B. Numerosity

There is no certain minimum number of plaintiffs required in order to bring a class action suit. *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001). However, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.* at 226–27. Here, Plaintiff points to Defendants' allegation that this matter "impact[s] . . . hundreds of New jersey account holders," (Notice of Removal, ECF No. 1 exh. B ¶40), to estimate that there are far more than forty members. (Motion to Cert. Class, ECF No. 19 at 12). Plaintiff also alleges that "from information provided by the RAM Defendants under the confidentiality order it appears at a minimum there are over 6,000 class members." (Pla. Supp. Br., ECF No. 66 at 5). Defendants do not appear to challenge this requirement. As such, the Court finds that Plaintiff has satisfied the numerosity requirement of Rule 23(a).

### C. Superiority

In the superiority inquiry, courts shall "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996), aff'd sub nom. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) (internal quotations omitted). Courts should also consider four nonexclusive factors: "(1) the interest of individual members of the class in controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely

to be encountered in pursuing the class action." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

Here, judicial efficiency weighs in favor of certifying the Class. The proposed class members proofs are not complex—they are all based in identical or near-identical contracts with Defendants—and the calculation of their damages, while different, will be straightforward and quickly determinable by financial records. The damages in these cases are likely small, making individual claims by each individual member of the proposed class unlikely if not impossible. And most importantly, the legal issue in each proposed class member's case would be the same, reliant on the same actions of the same Defendants violating the same laws making class management efficient and favorable to individual trials. Therefore, the Court finds that Plaintiff has satisfied the superiority requirement of Rule 23(b)(3).

### D.  Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amehem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Two inquiries must be made in order to determine adequacy:  the first looks at the qualifications of the counsel that is representing the class and the second looks at whether there are conflicts of interest between the representatives and the classes. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009).

Here, Plaintiff represents that her two attorneys collectively have more than ninety years of experience between them and have previously been approved to represent classes before this Court. *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, No. 11-1219, 2012 WL 3262461, at *1 (D.N.J. Aug. 7, 2012). As far as the Court is aware, no issues have been raised regarding Plaintiff's counsel, *see Schering Ploug, 589 F.3d at 602* (ending this inquiry after stating that no issues have

been raised regarding counsel), and, other than the Court's concerns with the arbitration agreements discussed below, the interests of the members of the proposed class are aligned. As such, the Court finds that Plaintiff can likely satisfy the adequacy requirement of Rule 23(a).

### E.  Commonality, Typicality,  and Predominance

Since both commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence," courts may consider them together. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Courts may also consider predominance at this junction "[b]ecause [Rule] 23(b)(3)'s predominance requirement incorporates the commonality requirement." *Georgine*, 83 F.3d at 626. Having concluded that more discovery is needed to allow for the Court's rigorous review of each of these three requirements, the Court will review them together.

First, to meet the commonality requirement, Plaintiff must show that they "share at least one question of fact or law with the grievances of the prospective class." *Schering Plough*, 589 F.3d at 597.

Second, to determine whether Plaintiff has demonstrated typicality, courts ask "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006) (citation omitted); *see also Stewart*, 275 F.3d at 227 ("The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members."). The Third Circuit has stated the following regarding typicality:

> [T]he proper consideration in assessing typicality . . . include[s] three distinct, though related, concerns:  (1) the claims of the class representative must be

11

> generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Schering Plough*, 589 F.3d 585, 599 (3d Cir. 2009). "[I]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002) (citation omitted), aff'd. 84 F. App'x 257 (3d Cir. 2004). "A claim 'framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice.'" *St. Louis Chiropractic v. Fed. Ins. Co.*, No. 07-3110, 2008 WL 4056225, at *7 (D.N.J. Aug. 26, 2008) (quoting *Baby Neal*, 43 F.3d 48, 63 (3d Cir. 1994)). A defendant, on the other hand, can challenge typicality by proving the named plaintiff or small subclass is "subject to a unique defense that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006); *see Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974).

Third, plaintiffs proceeding under Rule 23(b)(3) must also show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." F.R.C.P. 23(b)(3). The "focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments. Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). This is particularly so where the inquiry necessarily focuses on what defendants did rather than what plaintiffs did, so the proof for these issues will not vary among class members. *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2003).

Plaintiff in this case alleges that Defendants fraudulently removed funds from the proposed class members' escrow accounts and payed themselves in "illegal fees" in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., and the New Jersey Debt Adjustment and Credit Counseling Act, N.J.S.A. 17:16G-1, et seq. (Motion to Cert. Class, ECF No. 19 at 15–16). While the proposed class members' monetary injuries may differ in value, they are all victims of the same alleged systemic fraud at the hands of the same Defendants and present essentially the same legal questions.

However, the Court's concern is the potential for binding arbitration contracts and settlement agreements to impact typicality, become a major force of the litigation, and dominate over the issues common to the entire class. Arbitration agreements—whether they are signed by the named party or proposed class members impact the Court's analysis when determining whether to grant certification of a class. *See e.g., Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co.*, No. 07-4925, 2008 WL 4056244, at *7 (D.N.J. Aug. 26, 2008), aff'd, 342 F. App'x 809 (3d Cir. 2009) ("The Court finds that not only are Plaintiffs unable to represent a class, as Plaintiffs are obligated to submit its claims to arbitration, but each potential class member would also be required by their policies and/or state law to submit any dispute to arbitration."); *St. Louis Chiropractic*, No. 07-3110, 2008 WL 4056225, at *8 ("Because Plaintiff must submit its claim to binding arbitration in Minnesota, Plaintiff could not properly appear before the Court, let alone adequately represent an entire class . . . .").

The parties have conducted initial discovery and determined that some of the contracts signed by members of the proposed class could include an arbitration clause, while others, including that of the named Plaintiff, likely do not. The effect of the existence of an arbitration clause is twofold. First, the absence of an arbitration clause in the named Plaintiff's contract

13

presents typicality concerns and calls into question the adequacy of her representation with respect to those class members who have arbitration clauses. If there are a significant number of the proposed class against whom a defense based in the arbitration clause could be brought, there is a risk that such a legal issue would become the focus of the litigation and leave the class members as a whole "severely disadvantaged." *Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976). Second, it raises the issue of whether the arbitration question—which members of the class have arbitration agreements and whether such agreements are enforceable New Jersey —will predominate over the substantive issues of law common to the entire class.

      The Court has substantial concerns that if the Plaintiff is not subject to an arbitration agreement, she may not be a suitable fiduciary for the members of the proposed class who have arbitration agreements. *See Johnson v. BLC Lexington, SNF, LLC*, No. 19-064, 2020 WL 3578342, at *6 (E.D. Ky. July 1, 2020) (denying class certification because "determining whether potential members of the class are subject to binding arbitration destroys commonality and typicality of the class" and Plaintiff was not subject to arbitration); *Spotswood v. Hertz Corp.*, 2019 WL 498822, at *10 (D. Md. Feb. 7, 2019) (finding that the threshold question of whether the proposed class members are subject to arbitration "predominates over common merits questions and destroys commonality"); *Conde v. Sensa*, 2018 WL 4297056, at *11 (S.D. Cal. Sept. 10, 2018) (finding that having to find out which proposed class members were subject to binding arbitration would overshadow the common issues to the case and plaintiff could therefore not meet the predominance requirement when approximately 84% of the class was likely subject to arbitration); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 121–24 (E.D.N.Y. 2019) (finding no typicality because named plaintiff opted out of arbitration and 99% of class did not).

More importantly, however, the Court cannot currently make the necessary factual findings that there are some members of the proposed class who have arbitration agreements while the named Plaintiff does not. The Court does not have the full contracts—including the contract between the named Plaintiff and Defendants—despite the parties' agreement that one exists. The Court does not have the contracts of the alleged 6,000 plus proposed class members or factual information as to how many different potential versions of the contract were used. The Court does not have any information as to how many of the proposed class members may be subject to an arbitration agreement – whether 1% of the class has arbitration agreements or 99% does. This is the type of information that courts need to conduct a rigorous inquiry into the appropriateness of a class certification. At this time, the Court simply cannot make a finding as to whether Plaintiff's interests are wholly aligned or patently conflicted with proposed class members who might be subject to an arbitration clause.

Plaintiff's arguments do not persuade the Court otherwise. First, all the cases that Plaintiff relies on to argue that the arbitration agreements will not impact the class certification analysis are factually distinct. (Pla. Supp. Br., ECF No. 66 at 7). The parties in those cases provided the precise number of proposed class members that had arbitration agreements, thus allowing for a meaningful review of the potential impact of such agreements on the litigation. *See Slamon v. Carrizo*, 2020 W.L. 2525961, at *13 (M.D. Pa 2020) ("Based on the Court's analysis of the 253 non-duplicative, fully non-released leases submitted by Plaintiffs, an estimated 72 of these leases may contain an arbitration provision."), *Eaton v. Ascent Resources-Utica, L.L.C.*, 2021 W.L. 3398975, at *13 (S.D. Ohio 2021) ("Ascent contends that 330 of the approximately 670 leases in subclass (d) and (e) contain arbitration provisions"). This Court simply cannot make such factual findings here as

15

the parties have not provided that information and appear to not even know that information at this stage of the litigation.

Second, Plaintiff makes extensive argument as to why the arbitration agreements are unenforceable in New Jersey and therefore have no impact on the Court's analysis. However, it is unclear to the Court how it is supposed to conduct a rigorous review of this agreement, and determine its enforceability, when the parties have only provided the Court with template agreements that proposed class members *may* have signed. *See In re United Companies Fin. Corp.*, 277 B.R. 596, 601-02 (Bankr. D. Del. 2002) (evaluating the enforceability of an arbitration agreement that was present in 1,373 of the 1,503 proposed class members' contracts). The Court needs the actual arbitration agreements that were executed in order to determine whether they are enforceable.[4] Plaintiff's arguments that Defendants have not yet taken any action to enforce the arbitration agreement is premature and misplaced. It is Plaintiff who has the burden on this Motion. Defendants have, at this stage, presented sufficient evidence to question the appropriateness of class certification. Whether Defendants ultimately succeed on a motion to enforce the arbitration agreement remains to be seen and the Court makes no determination in that regard.

Finally, the Court notes its concern related to the Florida Settlement Agreement raised by Defendants as a potential bar to the participation of some of the proposed class members. Without any information as to the identities of the proposed class, or the identities, and potential number,

---

[4] Plaintiff's own brief points out the many pieces of missing information that are needed for the Court to adequately decide the Motion. For example, Plaintiff cannot even state in what years arbitration clauses were included in the contracts and what years they were not. (Pla. Supp. Br., ECF No. 66 at 6). Further, Plaintiff cannot determine if the language in the arbitration agreements was the same and in fact concedes that the language differed. (Pla. Supp. Br., ECF No. 66 at 6). This Court's review reveals at least two different arbitration agreements among the multiple template contracts produced. *Compare* (Pla. Supp. Br., ECF No. 66, exh. L) *with* (Def. Br. in Opp., ECF No. 26, exh. B).

of those who may be bound by the Florida Settlement Agreement, the Court is also unable to conduct a rigorous review as to what, if any, impact it might have on the certification of a class.

In summary, the parties need to complete discovery as to the existence of arbitration agreement(s), the specific language of any such agreement(s), and the number of potential class members who executed them, among other issues.

## V.     CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion to Certify Class (ECF No. 19) without prejudice. Plaintiff will be granted leave to renew her Motion at the close of discovery. An appropriate Order will be entered.


Date: March 25, 2022

　　　　　　　　　　　　　　　　　　　　　/s/ *Christine P. O'Hearn*
　　　　　　　　　　　　　　　　　　　　**Christine P. O'Hearn**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**